In number 09-1471, Clearplay incorporated against Abkhasis and Nissim Corporation. In number 10-1471, Clearplay incorporated against Abkhasis and Nissim Corporation. Mr. Geary, when you're ready. Thank you, Your Honor. Good morning, and may it please the Court. The party's agreement states that if any provision is deemed unenforceable, then that agreement automatically terminates in 60 days. Here, Clearplay affirmatively sought a ruling that section 12.3 of the party's agreement was unenforceable as part of their litigation strategy in a dispute over noncompliance of the agreement. Clearplay then got what they asked for, and it should not be now permitted to escape the consequences of its actions. The agreement which provides for automatic termination flows from Clearplay's request, which was followed that section 12.3 of the agreement be deemed unenforceable. So the injunction, which is a drastic and extraordinary preliminary injunction, a drastic and extraordinary remedy, which should not ordinarily be granted except on extreme circumstances, should fail the fiscal court. And not ordinarily reversed by us because we apply a differential standard to what the district court has done right. Your Honor, the court's standard of review is abuse of discretion. Yes, in general, on review of a preliminary injunction. However, within that analysis, review of contract interpretation and review of the legal effect of court orders are both legal questions which this court reviews de novo without deference to the lower court. And this appeal and the likelihood of success issue turns on contract interpretation and the effect of the district court's order adopting the master's report. So here, the likelihood of success factor of the injunction turns on legal questions, which de novo review applies to. The other issue that renders the preliminary injunction fatally flawed is the lack of irreparable harm. Here, Clearplay walked into the district court, got a hearing in a week, Nassim was able to file a brief on short notice a day before the hearing, and Clearplay offered as irreparable harm a one-line sentence from the president of the company saying that if it didn't get the injunction, that its business would collapse. There was no support given for that statement, no other evidence, just merely the statement, the conclusory, very self-serving statement that the business would collapse without the injunction. The Southern District of New York looked at exactly the same type of evidence on a preliminary injunction in the Otto Sunroof case that we cited in our brief and said, that is simply not good enough to constitute a clear showing of irreparable harm that's required for preliminary injunctive relief. In that case, the president of the plaintiff corporation came in and said, in a conclusory, self-serving statement, our business will collapse without the injunction, nothing more. And it wasn't good enough, it shouldn't be good enough here, it shouldn't be good enough that someone can walk into federal court on short notice and just simply say we're going to go out of business with no proof. There was no supporting factor such as, here's our customers, here are the important customers, these customers make up so much part of our business, if we don't get this injunction, we will lose these and therefore we will collapse. If there's a foundation for a claim that a party, an entity may go out of business, then maybe they can show irreparable harm. But here, there was none of that. There was no evidentiary foundation. It was simply the assertion. And ClearPlate bears the burden of establishing all of the factors for preliminary injunctive relief. And they have to clearly establish each of those. And they didn't meet that on irreparable harm here. And I believe there's a fatal defect in this injunction, and the court, I think, could decide this case solely on that issue and reverse the injunction for that reason. Well, in the judge's order, JA3, is that what we're referring to? Because he makes several findings with respect to irreparable harm that seem to go beyond what you've described as that one sentence. So notwithstanding whether you're right about that one sentence that appeared as a threshold matter, he made additional findings beyond that, right? Your Honor, I wanted to focus on that. At page 3, which is the court's discussion of the irreparable harm section, in that last full paragraph on page 3, what do we have here? We have ClearPlate contends that its business will not survive. Sentence 2, ClearPlate claims that declarations will prevent it from doing things. Then we move on. No, I was just questioning because I thought you were telling us a few minutes ago that the only thing that was on this record was the statement that says we're going out of business, we can't survive. And I was just questioning. It seems to me, at least based on this finding, that there was more in play there and there were more facts on the record. Am I wrong about that? Yes, Your Honor. The only evidence offered by ClearPlate in support of the motion for injunction was the declaration of Matthew Jarman, ClearPlate's president, and it's in the record at JA 0481819. And on paragraph 10, I'm going to quote, If the defendants are allowed to declare the license agreement terminated and deny ClearPlate its rights under the license agreement to practice Nassim's past, ClearPlate would be financially ruined. Period. The court here on page 3 is not citing any evidence. It's referring to ClearPlate's contentions. And I believe the court may be also referring to various attorney arguments that were made at the hearing by ClearPlate's counsel. But those attorney arguments aren't evidence. And I actually want to focus on these because one of the attorney arguments, even arguments that are being put forth in the briefing of this court, aren't supported by evidence. There was a statement made by counsel, ClearPlate's counsel during the injunction hearing, that ClearPlate's officers haven't been taking salaries and they're in financial straits. That argument or that statement is cited in their brief to this court, and I would invite the court to look at what they offer as record citations. What they cite as record citations is simply counsel argument. Mr. Jarman never said that in his declaration. There was no evidence for it at all. And so the court here, when it's discussing irreparable harm, is merely parroting ClearPlate's contentions. And my point is there was no evidence offered but for the conclusory statement of the president, which is too speculative and lacks foundation to clearly establish irreparable harm that is needed for such a drastic and extraordinary remedy as a preliminary injunction. There are other reasons that, now I want to point out here on page 4, closing this court's discussion of irreparable harm, it says that Nassim has not refuted ClearPlate's claims. But Nassim had no evidentiary burden to establish otherwise. It was ClearPlate's burden to clearly establish all of the prerequisites for injunctive relief. We did dispute it. We said this is not true and there's no proof for it. So we did deny it. We did not agree to it. But I think the court here didn't apply properly the burdens of injunctive relief and what needs to be shown and who has to prove what. Also, we were only given a week to even respond to this injunction. We wouldn't have even had any ability to go and discover, for example, what their true financial situation is. Mr. Carey, I'd like you, before you use up your time, to address the jurisdictional question, if you would. Yes, Your Honor. I think there are a number of reasons why. Well, let's focus on the one that seems to me at least, my colleagues may disagree, but it seems to me to be the core of the case, which is the question whether, under our line of cases, starting with additive controls and so forth, this is a case in which there's a rising under-jurisdiction under 1338 because there is a necessary patent law issue as part of the plaintiff's well-pleaded complaint. So why is that so here? And why is it not the case that this case, as Christensen explains, could have been resolved simply by deciding the license issue without getting into issues of patent law? Okay. Clearplay, the reason why there are patent law issues that are necessary elements of the claims here is that our allegation was made to third parties. This is an action seeking to hold Nassim liable for communications made to retailers such as Target, Best Buy, and a potential supplier like Samsung. So Nassim's communications to those companies were telling those companies that the continued sale of products supplied by Clearplay infringes Nassim patents, and our letters attach draft complaints for patent infringement. So there are two things that are said as I read those letters and as I read the complaint in particular. One is that these products are not within the scope of the license, and the second is that they're potentially infringing. Now the district court has decided now that your representations about the license, without any talking at all about infringement, are wrong because they were covered by the license, right? The court has found that, right? The court has found that. Right, okay. So why isn't it the case that there is at least one theory of liability under the state law tort which doesn't depend on an infringement-related issue or the validity of the patent? Okay. First of all, because the license doesn't take care of the entire scope of infringement, there are two fields of use of the patent, and we allege that Clearplay infringed both of them. The license only covered both of them. Let me back up because you're heading off in a direction that is different from the one that I'd like to have your response on, if you would. Suppose there were a trial on the state law tort issue, and suppose further that the only evidence that the plaintiff put in was that there were false statements that these products were outside of the scope of the license, period, and the plaintiff never used the word infringement or never used the word patent. Would that be sufficient to establish liability under the state law tort? It wouldn't prove the claim here. Well, then, well. Because the scope of the infringement assertion in the letters wasn't limited to the license. In other words, for them to say we have a license doesn't get them off the hook for the full scope of infringement that we were asserting to the retailers. Therefore, there was an infringement question above and beyond the license issue. An infringement may be one of the theories that one could pursue to establish a violation of the tort. But under Christensen, if you have alternative theories, one of which does not require the resolution of a patent law issue, then there's no federal jurisdiction, correct? Well, it is correct. It is correct. That's a correct statement. It's a rhetorical question. So the question is then, why doesn't this case present the classic instance in which there are two theories, one of which the district court has already addressed, in a sense, by saying there's no violation of the license? Well, the district court has also ruled that they do not have a complete license to the patents. And that ruling is in a companion case called the 08 case. And it's a record here, and we cited it in our brief. There is another word that says even with the license clear play, you still are facing a claim of infringement by Nassim. Okay. Well, but the question here is whether there were false statements made that constitute a state law tort. And if those false statements are limited to the license, where's the federal jurisdiction? Excuse me. Well, because the letters themselves assert infringement. We weren't going to these third-party retailers and saying you don't have a license. We were saying you infringe, and Nassim will sue you for patent infringement. Well, no, they're saying that clear play didn't have a license. True. Didn't have a license because of the noncompliance allegation. And they didn't have a license because the license didn't even cover the other side of the infringement coin. And so you can't evaluate the truth or falsity of the infringement warnings without addressing the infringement question. It cannot be disposed of simply. Can't you decide, couldn't a jury resolve this case? Let's assume they found that they had met their burden, whatever it is. That's another question of bad faith or falsity or whatever. With respect to the license, wouldn't that be the end of the case? If he could establish that he met his burden with respect to the falsity of the license, the bad faith of your statement. There's a statement in there. We are not there. There is no license, and therefore there is infringement. If they established everything they had to solely with respect to the license without ever getting to the infringement, they would establish liability under their state law claim and this case would be over, would it not? I don't believe so, Your Honor. Okay. What would be left for the case if the jury comes back and they said they've met their burden, they're violating, they're entitled to relief as a state under state tortious interference based on the falsity of the license? They would have to prove that we had no good faith claim of patent infringement. Why? No, I thought it was that they had no good faith. Let's assume they've proven that there was no good faith claim with regard to the existence or nonexistence of the license. They've proven that. Except that they've proven that. What else do they have to prove to get relief as a state law claim? They have to prove that our infringement allegation had no basis. Wait a minute. Your license, as I understand it, correct me if I have a misapprehension here, but your license imposes a variety of obligations pursuant to the settlement agreement on Clearplay that they must do X, Y, and Z and so forth. Those obligations, as far as I can see, are not tied strictly and necessarily to the patent. They are obligations that the parties agreed to comply with. Now, your argument in part is, well, those obligations have not been adhered to, right? And if the district court says, yes, they have, there's been substantial compliance, why isn't that enough, as Judge Prost's example shows, without getting into the patent stuff at all to establish a false statement? Because the allegation to the retailers was made to protect Nassim's patent rights from infringement by the sale of the products from the third-party retailers. And it wasn't just limited to the license issue. They would also have to show that there wasn't another infringement claim, which there was because they didn't have a full license to the patents. The other field of use, the DVD specifications field of use, is purely a patent infringement. But if they've established bad faith and falsity and everything else with regard to the state, there is a statement we all agree with regard to whether or not there's a license. If they've established all of that with respect to the license, you're going to get up and say, well, no, you, or they're going to get up and say, no, you have to do more, jury. You have to resolve anything with regard to infringement. Could they not get relief under a state law claim if they could establish or satisfy the jury that there was false claims, bad faith? We're just talking about the license now. Could they not get relief under the state law? Your Honor, I believe they would need to show that we didn't have a viable infringement claim. And the infringement assertion that we made… Well, that would just be saying that they only lied and had bad faith with respect to half of the statement they made and the other one was okay, but that doesn't get someone off the hook, right? I mean, even if you could prevail on the infringement aspect, if we've established that your statement with regard to the license was completely bad faith, inappropriate, false, they'd still get relief no matter what you proved up with regard to the infringement piece of this. No? No, Your Honor, because the retailers were charged with both kinds of infringement. Well, you're saying, I take it, that if there was infringement, then there's no license, right? If they are infringing in a way that goes beyond the scope of whatever the license authorized them to do, is that… In other words, if… Yes. All right. I thought you were saying the reverse earlier, which is that there is stuff with regard to infringement that's beyond the scope of the license. That's what I thought your position was. I mean, what you seem to be saying now is that you can have infringement without regard to the situation of the license. Yes. There are two types of infringement that are asserted in the letters. For example, if you look at the letter to Target, I think the second one we talk about, there's the filtering infringement and then there's the DVD specifications infringement. Only the filtering infringement is affected by the license agreement. Okay. So you could… Yeah. All right. So part of the infringement claim goes down with the license. In other words, you're liable under state law. How would it save you even if your second infringement allegation with respect to certain of the products isn't false and wasn't in bad faith? How does it save you if you made one bad statement but not two? They don't have to prove up two in order to establish liability under the state law. Well, if there was a valid infringement case on the DVD specifications issue, which is unrelated to the license… If it's unrelated to the license, then you don't have to reach it necessarily. Then there are two separate claims. One infringement claim is inextricably tied to the license issue, and another infringement claim is outside of that. And Christensen says if any one claim turns on the federal patent law question, there's jurisdiction. If one claim that you have to reach, that it's necessary to reach for the outcome, then what I'm suggesting to you is once you found liability with respect to one of the assertions in the letter, you're liable under the state law. I don't think any state law says if you did it two statements, you get double the… Well, Christensen distinguishes, I think you'll agree with me, between two separate claims versus two theories underlying a single claim. And it's an important distinction. It is. Because if you have two separate claims, one of which arises under patent law, then you're home free. The other comes in supplemental jurisdiction. But if you have one claim, which has two theories, one of which is non-patent related, you're out of court. And the question is… And Christensen himself took one count. And so the question in this case is are we talking about claims with multiple theories, or are we talking about multiple claims? I believe we're talking about multiple claims and our DVD specification issue. They even plead… Certainly nothing in the complaint presents the multiple infringement issues as separate questions as I read the complaint. Actually, Your Honor, in their current complaint… No, no, but we're talking about the second amended complaint because that, by your own contention, is the complaint that's before us, not the third. Correct. So let's leave the third off. Well, they argue that specifically in the second amended complaint you'll see allegations that their products do not contributory infringe, irrespective of the license issue. They actually plead patent law questions in that complaint, in the second amended complaint. But if it is found to be a license that's valid, then those issues go away, right? No, Your Honor, because there is this other distinct claim of infringement that is separate from the license field of use that is a patent law question. It doesn't affect it. There's no license on that other claim at all. There's no license defense applicable whatsoever. So it's purely a matter of infringement, maybe even patent validity, but patent issues. The other final point I would make very quickly is I don't think that, and we'll put this in the brief and I'll rest on that, but I don't think that patent license soars. It's an element of asserting infringement to a third party to say that infringement was done without authority. It was an element of the thing to say that they didn't have a license. That doesn't take it outside of patent law. It's an element of the infringement allegation. It's whoever without authority uses the patent invention. Very good. Thank you, Mr. Morton. Mr. Morton. Thank you, Your Honor. If it pleases the court, as we've been discussing, the issue before the court today is whether Judge Huck abused his discretion in entering a very narrow injunction which prohibits Nassim from misrepresenting what Judge Huck's ruling was in the related case. Specifically, Judge Huck prohibits Nassim from interfering with Clearplay's business relationships by representing that Judge Huck held that the license agreement between Clearplay and Nassim was terminated pursuant to 12.3 of the license agreement. Judge Huck has repeatedly, both prior to, in, and since he entered his order in the related case, made very clear that he never did any such thing. I don't think you have to spend a whole lot of time on that issue. Well, then let me move to the ones that I think Mr. Carey argued, and if there's something you'd specifically like me to answer, I'll move to those. Well, we certainly would like to hear about jurisdiction at some point, but you can get to it later. I'll start there. Well, let me ask you one thing about jurisdiction so you can include that here, which is, you know, you're pushing to get this moved out. But there are two issues. One is preemption, and the other is jurisdiction. So the question I have for you is a practical one. Is it your view that if you get it out of this court, you will be left to a lesser standard, which seems to me everybody agrees generally federal law is tougher than state law with respect to proof on this state interference? Is it your view that if you move this case out of here into the Eleventh Circuit, or it ultimately stays in the regional circuit, that you will not be compelled to abide by this court's standard with respect to bad faith? I understand your question. Let me start off by saying we felt duty-bound to bring the jurisdictional issue up. We're not trying to avoid this court's jurisdiction. We believe it's there, and we've raised it. You believe the question is not the jurisdiction. We do believe this court lacks jurisdiction under Christianity, as this court's been discussing earlier. With respect to the question of what's the standard that would be applied in the Eleventh Circuit, I think the answer there is actually that the Eleventh Circuit would apply the court's patent preemption doctrine to the extent that the claims involved a theory that involved patent. However, to the extent allegations were made, and they are, and they've been alleged in the complaints. To the extent allegations were made that are separate and apart from the patent claims, those allegations would not be held to the patent preemption standard, the higher standard that this court has established in MECON and other cases. To cut to the chase, do you think, in following up on Judge Crow's question, do you think then that a statement by the patentee that A is infringing that that statement made to customers of A would be subject to the higher standard, the bad faith standard, but a statement that A is unlicensed would not be? I do believe that, Your Honor. I believe that is exactly the law, and I believe that... Is there any support for that proposition, that the license, the allegations with respect to whether you have a license, if you don't happen to mention the word patent, that a different standard applies? I believe that the patent preemption doctrine itself establishes that it applies when the claim made is based upon a theory of the patent. Okay, but the question, my question is, is there any case that has said, and not, in situations where the assertion is that this is unlicensed activity? I'm unaware of any case that makes that exact distinction, Your Honor. But in this case, correct me if I'm wrong, because there's so many complaints it's confusing, but I thought the letters at issue here, with respect to the jurisdictional question, the statement is, they have no license, and therefore they infringe. So that's not Judge Bryson's clean hypothetical, at least, that there's just a statement that has no licensing without tying it to the consequence of infringement. Am I right about that? Yes and no. The answer to your question is that the letters actually have multiple statements. By the way, I want to start off by disagreeing with Mr. Carey on one thing, and that is, these letters that were sent do not allege the second form of infringement that Mr. Carey's talking about, this claim about the DVD specs. If you read the letters, and I realize the Court has, that are attached to the complaint, it is clear that every one of them says they're unlicensed, and therefore they infringe. That's what each of those letters says. And so... Is there anything in your complaint or complaints about this other infringement issue? Each of the complaints attaches letters that were sent by Mr. Carey to these, and yes, one of the letters, it's the June 11, 2007 letter that was sent, actually a number of the letters have this, but the best example is the June 11, 2007 letter. In that, the following statements were made that we believe are just flat faults and don't in any way, shape, or form involve even a license issue. And they are this, the CP007 USB DVD player, clear place player, does not operate as advertised, accuses us of false advertising. It goes on to say, the player fails to provide any filtering whatsoever of entire categories and levels of explicitness content, which the menu screen of the player leads customers to believe can be filtered. That, it goes on to say, the player also does not filter the same objectionable content consistently, not only across different movies, but also within a single movie. And then it says, it concludes that paragraph with this, this clear play DVD player is qualitatively deficient and constitutes a disservice to customers as well as to the standard custom play established. But my, what I wanted to try to tie down, and this is in connection with Mr. Carey's argument, Mr. Carey says, well, there's this separate issue of infringement that doesn't pertain to the license, but infringement. Is that issue in any way raised by your complaint? It's not, because that issue wasn't set forth in the letters that were sent. The letters that were sent never asserted that the clear play was lacking this DVD specification license. The, if you, I mean, the best example of that is one of the letters that was sent. It's the June, January 14, 2008 letter that was sent indirectly to Best Buy. Do you have an appendix? Yes, yes, yes. It's JA04402, and then 403 is where I'll be leading. And really, just for the record, the June 11, 2007 letter was JA04349. Just so that, Judge Post, you can find that later if that's what you'd like to do. In here, if you look at the, on page 403, the second page of this letter, in the second paragraph, it makes clear, Nassim hereby provides clear play, formal notice that CP427 player is also not covered by Nassim's license, and therefore that clear plays and Best Buy sells and offers to sell the CP427 player constitute infringements of Nassim's patents. The other issue with respect to these DVD related patents, clear play was never given, those were not raised. They weren't. Now, Mr. Carey refers to a second letter that was sent to Target. And in that letter, they do raise these DVD specifications issues. But that's because in that letter, they're writing about not just clear place DVDs, but rather Target was manufacturing and selling its own private label DVD players. And Mr. Carey was trying to inform them that they needed to have a DVD specifications license, that they didn't have one, and that they were infringing because of that. That's not the same allegations that were made with respect to clear play. And I can highlight that by showing you one classic example. And that's the Samsung interference. Samsung has a DVD specification license from Nassim. Just notwithstanding that, when clear play went, now clear play has a filtering license, Samsung has a DVD specifications license. Together, you'd think that would cover everything and we'd be done. In reality, what happened was the minute we disclosed that we were in negotiations with Samsung, Nassim sends a letter saying, hey, they're not licensed, and therefore if you do business with them, you will violate not our DVD specifications license because they can't make that claim. They say clearly it's their filtering patents, which we have a license to. And that is by far the best example that makes it very clear that we can prevail on this case without ever getting to the patent. And you know what? The best example, the best proof of that. So prevail under what standard? And so I think now I believe the standard is that with respect to, to the extent there are any patent claims that we end up asserting at trial, the MECON game standard will apply. We'll have to satisfy the bad faith standard. And I'll hasten to add that Judge Huck has already held us to that standard in this case and has determined that our allegations have satisfied that. Now, he's expressed some skepticism about whether we'll prove that at trial. I intend to disprove him on that. And that, when we're dealing with the letters, leaving aside infringement claims, let's just talk about the letters and the state tort interference allegations. With respect to those letters, is it your view that the statement, you do not have a license and therefore you infringe, that irrespective of who has jurisdiction over that claim, federal law applies? I believe that to the extent we're making the allegation that the infringement claims itself were bad faith or were false, then we have to satisfy the MECON game standard, the patent preemption doctrine. I don't believe that parties are able to put into a letter any statement they want and then add in, and we think they're infringing, and then suddenly that elevates every statement in that letter to require us to satisfy this bad faith standard. Well, that's a fair statement, but I think it's also a bit of an exaggeration as to what we're talking about here, because it's not, you know, there aren't separate statements that are saying, and we don't have a license, and they don't have a license, and the license isn't valid, and they've done all this stuff. It's the only assertion in the letter with respect to the license. The consequence of that is what's the nub of this letter, which is they don't have a license and therefore they're infringing. So, I mean, obviously no one could disagree with your first premise. I'm just troubled that that's not the case. Well, I do believe that to some extent this case is that because of the letters that I read you about from the June 11, 2007 letter to Target, which accuses us in no short term of false advertising. Well, if other letters don't even reference, if they don't reference infringement, that's another story. I'm talking about the letters that rest on license and therefore in print. So you're arguing that there could be a circumstance in which we don't necessarily have jurisdiction because there's a way under Christensen to resolve the license issue, but you would concede that it's at least arguable that federal law will nonetheless apply to that license question. Oh, I absolutely agree that that's arguable. And I think, by the way, this case is, it's really hard to distinguish this case from Christensen. I mean, that case, it was the same type of thing. It was infringement allegations, which included, it was letters being sent that included infringement allegations, and the Supreme Court went through and said, looking at these claims, you're right, there is a theory under which it could be patent-based, but there are also theories which are not patent-based, and because of that, I'm sorry, Fifth Circuit, you have to take this case. And that's the holding by the Supreme Court in that case. I think it was Fifth Circuit, maybe it's Seventh Circuit. You know, you're right, Judge Bryson, it was Seventh Circuit. With respect to just what's happening now, I mean, this is, we were on a Third Amendment amended complaint, which is the other side says we're on the second, but the cases haven't been consolidated yet, have they? That's correct. The cases have not been consolidated, and I wanted to make that point, and thank you for bringing that up. The cases maintain separate case numbers. They maintain separate pleadings. They maintain separate discovery. They maintain separate rulings. Both the 08 case and the 07 case are completely separate cases. Now, at one point, Judge Huck did enter an order anticipating they would maybe try it at the same time, but obviously there's been no consolidation, no formal consolidation, and that is not a basis on which this Court would be able to assert jurisdiction. Absent, it's sending it back to Judge Huck, and Judge Huck formally consolidating it. In the classic example, that is actually the case that the plaintiff's side, or excuse me, the Nassim side, which is the First Circuit case, where they actually noted in the case that it was because the District Court had actually formally, after the trial, not protunct, entered an order consolidating them, and that was the only reason that they were able to determine Federal Circuit jurisdiction. Since we're talking about other cases, and there's a whole nexus of these cases that seem to be hovering around, there is pending before this Court an appeal which was argued, I guess, a couple of months ago. If the determination in that case is... If there's a reversal in that case, then I take it that, assuming we have jurisdiction in this case, that this case goes away. Is that correct? If the reversal is on the ground that the agreement was incorrectly interpreted. I think... Let me just qualify this by saying I think that Judge Bryson, you're correct. If the grounds were that if it was reversed and the effect of the reversal was that clear play was actually deemed to be... Not just sent back for more findings or more evidence, but rather it was a reversal in the form of clear play, you violated it, and now your products don't comply. And then this case would evaporate. Well, then at least the extent... Your question was with respect to the unlicensed claim, that one would go away, and I would have a... But the other claims with respect to false advertising, those claims I don't think would go away. Then it would be a question of whether or not I could prove them at trial, and certainly that would be the issue that Judge Huck would have to deal with. But the preliminary injunction would go away, would it not? Well, I don't think the preliminary injunction would go away because the preliminary injunction says you can't go out and tell people that the license agreement has been terminated. What they would be able to tell people, which frankly I don't know that they've been prohibited from selling people that now, is that the products don't comply, and therefore you shouldn't do business with them. I think they would be able to go back to what they were saying before, but I don't think they'd be able to say that the agreement's been terminated. Certainly it may not change the effectiveness of the interference, but it at least would have changed the substance of it. Could you address, since we're on the substance, could you address the question that Mr. Carey raised about the substantiality of the evidence of irreparable harm? Yes, thank you. I did want to get to that. Mr. Carey, I think, sort of understates exactly what Judge Huck knows in this case. Judge Huck has been litigating this case for a long time, he had the original case in 2004, he's had the other case since 2007, he has two more cases in front of him. In fact, I feel like he and I, we're becoming best friends. I mean, we appear in front of him so often. And he also understates what Mr. Jarman said. Mr. Jarman's testimony was not just, we'll be financially ruined. Rather, Mr. Jarman's declaration goes through and explains the financial effect. Do you happen to have the appendix page of Mr. Jarman's declaration, because I don't have mine. It's 4819. It actually starts at 4818 and moves to 19. Right. Thank you. You're welcome. Mr. Jarman's declaration goes through and explains in detail the effect this litigation has had on the company. And to the extent, I think this is important, ClearPlate is a filtering company. That's all they do. It's their entire business. And it's the reason why it's distinguished from the, I think it was the auto, I apologize, I've forgotten the name of the company, the auto sunroof case that Nassim cites in his reply memorandum. That case, the court held that a statement by the president that said you were going to go out of business when you were just losing a part of your business was not enough and found that that was not sufficient. But of course, that was a district court level and it was being judged on when making a decision. Here, Judge Huck is being evaluated on abuse of discretion standard on this point. And what this declaration says is ClearPlate's been in litigation for a long time. It's never made any money. In fact, it's been spending more on attorneys than it's ever made. And you know, Nassim knows this because they monthly, every single month since this license agreement's been entered, they've been receiving royalty reports telling them exactly what ClearPlate's revenue is. And so they know this. Judge Huck knows this because he received all of those documents in the related case. It goes on to say that if defendants are successful in further diverting our assets, that we're going to have some problems. And then it makes this point. Defendants have succeeded in diverting ClearPlate's assets and attention away from its core business. The defendants have not succeeded in their efforts to put ClearPlate out of business. ClearPlate is a still functioning business and with the enforcement proceeding behind it is eager to move forward with the development and promotion of its products. If the defendants are allowed to declare the license agreement terminated and deny ClearPlate's rights under the license agreement to practice Nassim's patents, ClearPlate would be financially ruined. It goes on to explain the basis for that statement. Without the license agreement, ClearPlate would not be able to sell its DVD filters or players without the threat of claims of infringement by defendants. Thus, ClearPlate would lose the revenues now generating and will generate from the sale of its products. It only has one business. There's only one business. It's filtering. If they can't filter, the business ceases to exist. The suggestion that that's not evidence of irreparable harm and that Judge Huck, notwithstanding all of the wealth of knowledge that he knows about this case, abused his discretion in finding that there was some real evidence of that is just a fiction. And the fact of the matter is that ClearPlate has... In fact, in the last case, part of the case was Nassim complaining that ClearPlate had been unable to pay its bills on a timely basis, its royalty payments to Nassim on a timely basis. Judge Huck knew that. He knew all of the information about ClearPlate's business. He had in front of it a declaration, which, was it done in a hurry? Sure. Because that's what happens when you're doing temporary restraining orders or preliminary injunction in a hurry. And so he got that. He had a wealth of knowledge. He heard argument, just like all the district courts do all the time. He heard proffers by counsel. And he did not abuse his discretion in finding that there was a very real likelihood that ClearPlate would go out of business if its entire business were shut down because it couldn't sell filters or players. In paragraph 6 of the German affidavit, there's a statement that ClearPlate lost millions of dollars in potential revenue associated with the placement of its products in Target and Best Buy stores. The implication being that Target and Best Buy determined not to do business with ClearPlate. Is there any place where that implication is spelled in the record, where that implication is spelled out more clearly? Absolutely. The complaints that are on file, and I realize there are a few of them, each of those attaches to the documents, letters from both Best Target counsel and Best Buy's counsel saying we're not doing this anymore because of the interference. And those are attached to the complaint? They are, Your Honor. And I can give you citations not off the top of my head. Okay. Okay. I'm over time, but I just want to... Sorry. We extended Mr. Carey's time a bit and we'll extend yours as well if you have one final point. You know, I think... You know, I think that really Judge Huck... Oh, the last point I want to make is this. Judge Huck went to great pains to make sure that this injunction was narrowly tailored so that it would not be a huge burden on either Nassim or... to allow clear play to be protected from statements that his ruling was not what he said it was. And he invited Mr. Carey to assist him in drafting the license agreement. Mr. Carey refused. But the bottom line is... Not the license agreement. Excuse me, the injunction. I apologize. I've misspoken. But Mr. Carey refused and he drafted a very narrowly designed injunction which should be affirmed by this Court. It's clearly not an abuse of discretion. If district courts can't order parties not to misrepresent what their orders are then this justice system's got some serious problems. To be fair to Mr. Carey, I think if I were in his position I don't think I would go help the judge draft the injunction against my client for a variety of reasons including one of which is that someone... I wouldn't say you, but someone could later say, well, Mr. Carey drafted this language. How can he now complain? Well, I don't disagree with you, Judge Bryson. I will say that if the judge has already told me that he's going to enter the injunction then I might want to at least talk to him about the scope so that I can minimize the impact on my client. I understand. Thank you, Your Honor. Very well. Mr. Carey, we've run through your time but we'll give you a couple of minutes for rebuttal anyway. Thank you very much, Your Honor. I appreciate that. First of all, on the jurisdictional issue, the only reason that the statement Clearplay doesn't have a license would have any meaning to someone like Target or Best Buy is because of a patent infringement allegation. That's the only significance to them of that statement. So to suggest that the letters had nothing to do with patents is to take all context out of the letters. The letters accused those retailers of patent infringement. The letters attached draft complaints for patent infringement. The letters were enforcement efforts of a patent owner. And patent owners who have happened to license patents shouldn't be protected less by this court's preemption doctrine than patent owners who haven't licensed their patents. I think that would be a serious mistake. This goes to the question of the breadth of the preemption doctrine, whether it applies to licensees as well as to people who are directly involved. Yes, but I want to make the point that you can't divorce the allegation to Target and Best Buy. You can't divorce the unlicensed and the infringing statements. It's a unitary statement. We're alleging they infringe. They're unlicensed and infringing. They're selling products that we have not authorized them to sell. Therefore, when you distribute them, you infringe too under 35 U.S.C. 271. That's the allegation. And it's a unitary, unlicensed, and infringing. It goes together. It's an element of 271 that it be without authority to say it. Second, the suggestion about the issue of the consolidation with the pending patent infringement case. There's a patent infringement case in front of the court regarding the DVD specifications. And the case law that we cited to this court says, I believe, the opposite of what my esteemed colleague just said. You don't need a formal order of consolidation. When things are consolidated for discovery or trial, which they were here, they asked, Clearplay asked Judge Huck to consolidate discovery of this case that we're here on today with that patent infringement case. And it was granted. Right now, discovery is proceeding on a consolidated basis in front of the district court. What does consolidated mean? I mean, consolidated can be exclusively. Is it just purely temporal? Like the discovery due for this case is due in the same day that the discovery is due for this case. Is that when you refer to consolidation of discovery? Is that what happened? As I would interpret consolidated for discovery, it would be that the documents produced in both cases can be used in both cases. No, that's not. That doesn't make it the same case. The depositions will be taken in both cases. The witnesses will be testifying simultaneously in both cases. More significantly, Your Honor, the court has consolidated the two cases for trial. They're set for trial on the same date in the same courtroom at exactly the same time. But in the normal scheme of things, they're either consolidated by an order by the district court consolidating the cases, or they're not, right? That often happens, yes, Your Honor, but that's not necessary. And we've cited a case here on this point in the brief in which it was an informal consolidation. Okay. Third, the specification issue regarding the DVD specifications nature of infringement is in the Second Amendment complaint. The letter to Target that was sent in October 2007 by me accuses Target of infringing the DVD specifications by selling a number of products, including Clearplay. They're on the list of people who don't have a DVD specifications license whatsoever and therefore infringe. Where in the complaint is there a reference to the DVD infringement issue? The complaint incorporates Exhibit F. The Second Amendment complaint incorporates Exhibit F, which is this letter. This letter is the infringement warning to Target. Are there any allegations in the complaint about this infringement issue? Yes. The allegations say that the Exhibit F, this letter to Target, was false and in bad faith. Where? Where is that so that I know what I'm looking at? In the complaint. Second Amendment complaint we're talking about. Yes, Your Honor. JA-04309 is paragraph 32. And it cites the October 2007 letter. And if you look at that letter, which is here in the record, you'll see that it raises the DVD specifications issue as the first issue, attaches a list of suppliers to Target who don't have a DVD specifications license. Clearplay is on the list. We were bringing to Target's attention in this letter the two types of infringement. We then go on to specifically say, and oh, by the way, Clearplay also infringes because of this other issue. But we have this DVD specification issue in that letter, and that letter is part of what they're suing us for in the Second Amendment complaint. Thank you. Could you have one final word? I didn't have any chance given the other issues that are important to talk about likelihood of success on the merits. All I would say is that if, very briefly, if... This is your theory that the judge actually, despite himself, actually invalidated the, or the magistrate invalidated the agreement? That the effect of what he did. I think you probably should leave that. Thank you, Your Honor. Thank you for your time. Thank you. The case is submitted.